UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER MORGAN,

      Plaintiff,                   Civil Action No. 14-11006

          v.                   District Judge Paul D. Borman
                                   Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Peter Morgan ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff has filed a Motion for Summary Judgment [Doc. #15]. Defendant did not file a motion for summary judgment, but instead, filed a Motion to Remand to the administrative level for further fact-finding, arguing that the present case should be consolidated with a case previously remanded by this Court. *Docket #17,* Case No. 12-12071. Plaintiff has not stipulated to a remand for further fact-finding, arguing that he is entitled to a remand for benefits.[1]  Both

_____

[1]However, in his Motion for Summary Judgment, Plaintiff requested either a remand for benefits or further fact-finding. *Docket #15,* 28-29.

motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

For the reasons discussed below, I recommend that Defendant's Motion to Remand [Docket #17] be GRANTED and that the case be remanded to ALJ Rabault for further administrative proceedings, to be consolidated with the remand previously ordered in Case No. 12-12071. I further recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED as to the request for a remand for an award of benefits, and that his alternative request for a remand for further fact-finding be DENIED as moot.

## PROCEDURAL HISTORY

### The Previous Case (No. 12-12071)

Plaintiff's quest for benefits has a lengthy procedural history.  Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI on June 30, 2008, alleging disability as of March 12, 2008.  Case No. 12-12071*, Docket #7* (Tr. 121-125).   After the initial claim denial, Plaintiff requested an administrative hearing, held on May 13, 2010 in Detroit, Michigan. *Id.* (Tr. 31). Administrative Law Judge ("ALJ") John Rabaut presided.  Plaintiff, represented by attorney Thomas Bertino, testified. *Id.*  (Tr. 34-49), as did Vocational Expert ("VE") Dr. Lois Brooks. *Id.* (Tr. 49-60).  On June 15, 2010, ALJ Rabaut found that Plaintiff was not disabled. *Id.* (Tr. 1, 30).  On April 9, 2012, the Appeals Council denied review.  *Id.* (Tr.1-6).  Plaintiff filed suit in this Court on May 8, 2012.  On October 31, 2013, the District Court adopted the undersigned's recommendation to remand that case for further fact-

-2-

finding.  *Id., Docket #25.*  As of the date of this Report, the Commissioner has not made a final determination in the remanded case.

### The Present Case

Following ALJ Rabaut's June 15, 2010 administrative decision, Plaintiff filed another, separate application for SSI on July 27, 2010[2] (Tr. 26).  On August 14, 2012, ALJ Oksana Xenos presided at a second administrative hearing (Tr. 47).  Plaintiff, again represented by attorney Thomas Bertino, testified, (Tr. 3-21) as did VE John Stokes (Tr. 70-82).   On September 12, 2012, ALJ Xenos found Plaintiff not disabled (Tr. 38-39).  On November 26, 2013, the Appeals Council denied review (Tr. 6-8).  Plaintiff filed suit in this Court on May 8, 2012.

## BACKGROUND FACTS

Plaintiff, born July 11, 1971, was 41 at the time of the administrative decision (Tr. 241).  He completed 11th grade and worked previously as a pizza deliverer, mover, hi-lo driver, and laborer (Tr. 246).  He alleges disability as a result of anxiety and depression; back problems resulting in radiating lower and upper extremity pain and numbness; and a knee condition (Tr. 245).

### A.  Plaintiff's Testimony (August 14, 2012)

Plaintiff offered the following testimony:

He stood 5' 11" and weighed 170 pounds (Tr. 52).  He had recently lost 20 pounds due

---

[2]Unless otherwise noted, transcript citations refer to the present case.

to his inability to cook for himself (Tr. 52). He lived with his girlfriend (Tr. 53). He had one adult child (Tr. 53). He had not worked since 2008 when he injured his back (Tr. 53). He required the constant use of a cane (Tr. 54). He was unable to walk more than 20 feet (Tr. 54). He did not exercise to improve the back condition (Tr. 55). He experienced only modest relief from the use of pain medication (Tr. 55). He experienced the medication side effect of drowsiness (Tr. 55). He obtained relief by lying down (Tr. 55).

Plaintiff's inability to sit, stand, or walk for significant periods precluded all work (Tr. 56). His manipulative abilities were limited by his need to hold a cane while standing or walking and upper extremity numbness (Tr. 56). He spent his waking hours watching television and sitting on a porch (Tr. 57). He did not drive (Tr. 57). He relied on his mother to drive him to doctors' appointments and shop for clothes and personal items (Tr. 57). His girlfriend grocery shopped for him (Tr. 57). He followed the Red Wings and had recently watched the Olympics on television (Tr. 58). He did not eat out or attend sporting events (Tr. 58). He did not use a computer (Tr. 59). His girlfriend helped him dress, bathe, and perform grooming activities (Tr. 59-60). He declined a treating source's recommendation to undergo additional back surgery (Tr. 60). He denied smoking, alcohol use, or the use of illicit drugs (Tr. 61). Back pain created sleeping disturbances (Tr. 61). His back condition had become "way worse" in the past three years (Tr. 62). He experienced falls due to lower extremity instability (Tr. 63).

Plaintiff testified that he took special education classes before dropping out of school

-4-

after 11th grade (Tr. 63).  He experienced problems following written and oral instructions (Tr. 63-64).  He was unable to write even "simple sentences" (Tr. 64).  His concentrational abilities were reduced by the back pain and medication side effects (Tr. 65).  He was chronically uncomfortable either sitting or standing (Tr. 66).  He experienced pain performing manipulative activities and a limited ability to turn his head (Tr. 66-68).  Due to his physical limitations, he experienced anxiety and depression (Tr. 68).

**B.  Medical Evidence**

**1.  Medical Evidence Previously Considered by ALJ Rabaut (Case No. 12-12071)**

**a) Evidence Relating to Plaintiff's Treatment**

In April, 2008, Plaintiff received chiropractic treatment for back pain.[3]  Case no. 12-12071, *Docket #7* (Tr. 229).   He exhibited leg pain and an antalgic gait  (Tr. 229).  Chiropractor Ellen Lazar noted "slow but constant" progress (Tr. 236).  A May, 2008 nerve conduction study showed the possible presence of lumbar radiculopathy (Tr. 249).  The same month, an MRI of the lumbar spine showed a bulging disc at L2-L3 with moderate spinal canal stenosis but no nerve root impingement (Tr. 238, 246).   In July, 2008, Benedict Go, M.D. noted Plaintiff's complaints of ongoing pain (Tr. 251).  The same month, Dr. Go completed a medical examination report, finding that due to lumbar radiculopathy, Plaintiff was unable to work indefinitely (Tr. 289-290).   He described Plaintiff's condition as "deteriorating" (Tr. 290).

---

[3]The page numbering in Section B. 1 refers to the transcript in Case no. 12-12071.

-5-

The following month, neurosurgeon Stephen Sullivan, M.D. recommended decompressive laminectomy infusion and pain therapy (Tr. 291). Dr. Sullivan noted that Plaintiff was "unable to tolerate physical therapy" (Tr. 291). In October, 2008, neurologist Karol Zakalik, M.D. noted Plaintiff's symptoms, observing that Plaintiff was "friendly, bright, alert and articulate . . ." (Tr. 325). Imaging studies of the cervical spine showed "mild disc space narrowing and spondylosis at C3-C4" (Tr. 382). Plaintiff began physical therapy in December, 2008 but was discharged later the same month "secondary to" surgery scheduled for the following month (Tr. 296). Physical therapy notes state that Plaintiff continued to experience "significant pain" and a range of spinal motion reduced by 90 percent (Tr. 304, 308). Bilateral straight leg raise tests were positive (Tr. 309).

A January, 2009 MRI of the lumbar spine showed that Plaintiff's condition had "slightly worsened" since the previous May (Tr. 329). A discectomy was performed without complications (Tr. 313, 317-318, 327-328). Following surgery, Plaintiff demonstrated a limited range of lower extremity motion but a full range of motion in the upper extremities (Tr. 314). Post-surgery notes created in March, 2009 state that Plaintiff reported continuing back and leg pain (Tr. 323). Imaging studies showed the presence of scar tissue at L2-L3 (Tr. 346).

June, 2009 physical therapy notes state that Plaintiff's discomfort increased with prolonged sitting or standing (Tr. 333). Therapy notes state that he was unable to perform heel and toe walking (Tr. 334). Dr. Go opined that Plaintiff experienced disabling back and

-6-

neck pain (Tr. 424-425).  Neurologist John L. Zinkel, M.D. noted that recent imaging studies showed a "successful decompression" (Tr. 338).  Dr. Zinkel observed that Plaintiff's gait was "very stiff legged as if he can't bend his knees," adding that he had "never seen this type of gait before" (Tr. 338).

In September, 2009, Plaintiff denied a history of substance abuse at a psychological intake exam (Tr. 384).  Plaintiff denied taking special education classes (Tr. 385).  Intake notes state that he appeared well groomed and was fully oriented (Tr. 386).  His affect and mood were deemed appropriate (Tr. 386).  Plaintiff reported sleep disturbances, hopelessness, and concentrational difficulties (Tr. 387).  He was assigned a GAF of 55[4] (Tr. 388).  He failed to show for two subsequent counseling sessions (Tr. 394-395).  A December, 2009 imaging study of the lumbar spine showed moderate disc space narrowing and spondylosis at L2-L3 with scar tissue (Tr. 345-346).  In January, 2010, Christine Zakar and Fredrick S. Junn, M.D. found that Plaintiff should undergo additional imaging studies (Tr. 339-340).  An MRI from the same month showed "[n]o canal or foraminal stenosis . . . at any lumbar level (Tr. 344).

In March, 2010, Dr. Go opined that Plaintiff had been unable to work since April, 2008, noting that Dr. Junn had recommended a second back surgery (Tr. 348, 426).  The same month, psychological treating records state that Plaintiff was depressed as a result of

---

[4]

A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

his functional limitations (Tr. 390). In April, 2010, Dr. Go completed a Physical Residual

Functional Capacity Questionnaire, finding that Plaintiff experienced the medication side

effects of fatigue, dizziness, and insomnia (Tr. 397). Dr. Go found that Plaintiff experienced

"constant" pain and was unable to perform even low stress jobs, or sit or stand for more than

10 minutes (Tr. 398). He found that Plaintiff was unable to lift even 10 pounds (Tr. 399).

The same month, an MRI of the lumbosacral spine showed "degenerative endplate changes"

at L2-L3 (Tr. 402).

The same month, psychologist Kirk Duncan found that Plaintiff experienced moderate

cognitive, concentrational, and social limitations (Tr. 403, 408). Dr. Duncan also found that

Plaintiff experienced sleep disturbances as a result of anxiety (Tr. 409). Dr. Duncan found

moderate and/or extreme limitation in activities of daily living, social functioning, and

concentration (Tr. 410-411). He concluded that Plaintiff was disabled (Tr. 413).

### b) Non-Treating Sources

In August, 2008, Elizabeth W. Edmond, M.D. performed a consultative examination

on behalf of the SSA (Tr. 256-259). Plaintiff reported that he worked as a piano mover

before becoming disabled (Tr. 256). He reported shooting right leg pain and generalized leg

numbness and weakness (Tr. 256). Plaintiff indicated that he took Vicodin and Tylenol #4

(Tr.256). He demonstrated a full range of cervical motion, but was unable to squat (Tr.

257). Dr. Edmond found no evidence of disc herniation but found "no reason to doubt

[Plaintiff's] complaint of pain" (Tr. 257). He exhibited a full range of strength in all

extremities except the left leg (Tr. 257). She found that Plaintiff required the use of a cane (Tr. 257).

The same month, Suzann M. Kenna, M.A. and Judith Kovach, Ph.D. performed a psychological examination of Plaintiff on behalf of the SSA (Tr. 260-262). He reported problems sleeping (Tr. 261). He appeared in contact with reality with good motivation (Tr. 261). He was assigned a GAF of 50-55 (Tr. 262).

In September, 2008, Rom Kriauchiunas, Ph.D. completed a non-examining Mental Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff experienced moderate difficulties in understanding, remembering, and carrying out detailed instructions; maintaining attention for extended periods; interacting appropriately with the public; and responding appropriately to workplace changes (Tr. 264). Dr. Kriauchiunas found that Plaintiff could perform "simple, low-stress, unskilled work on a sustained basis" (Tr. 265). Dr. Kriauchiunas also completed a Psychiatric Review Technique, finding the presence of a cognitive and affective disorders (Tr. 268, 270). Under the "'B' Criteria," Dr. Kriauchiunas found moderate deficiencies in maintaining social functioning and "concentration, persistence, or pace" (Tr. 277).

The same month, William Lockhart performed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour day; and push and pull without limitation (Tr. 282). The Assessment limited Plaintiff to occasional climbing,

-9-

balancing, stooping, kneeling, crouching, and crawling (Tr. 283). Lockhart found the absence of manipulative, visual, communicative, or environmental limitations (Tr. 284-285).

### 2. Additional Evidence Consider by ALJ Xenos (The Present Case)

### (a) Records Relating to Plaintiff's Treatment

In July, 2010, Dr. Go noted Plaintiff's reports of knee pain[5] (Tr. 355). December, 2010 imaging studies of both knees were unremarkable (Tr. 404-405). In July, 2011, Dr. Go noted that Plaintiff required the use of a cane and experienced significant pain (Tr. 393). In August, 2011 neurologist Teck Mun Soo, M.D. noted imaging studies showing lateral listhesis and retrolisthesis at L2-L3 (Tr. 377). He noted Plaintiff's reports of "wobbly" lower extremities and level "10" pain (on a scale of 1-10) in the back and legs (Tr. 378). He observed a normal affect and four out of five motor strength of the hip, knee, and ankle (Tr. 379). He diagnosed Plaintiff with disc collapse at L2-L3 (Tr. 379). Dr. Soo opined that Plaintiff had "failed conservative treatment" and could "no longer tolerate his symptomatology," recommending "minimally invasive lumbar laminectomy and fusion" at L2-L3 (Tr. 380). He noted that Plaintiff assented to surgery (Tr. 380). Dr. Go's November, 2011 notes state that Plaintiff's leg "gave out" (Tr. 390). Dr. Go's notes from the following month note reports of continued pain, but Plaintiff's statement that he was "not ready" to undergo the surgery recommended by Dr. Soo (Tr. 388). In February, 2012, Dr. Go opined that Plaintiff required the use of a cane (Tr. 544). Dr. Go's April, 2012 treating records note

---

[5]The page numeration for hereon forward refers to the present transcript.

-10-

diagnoses of anxiety, lumbago, depression, and lower leg and neck pain (Tr. 387).

On May 8, 2012, Dr. Go's records state that Plaintiff reported continued "severe" low back pain and required the use of a cane (Tr. 383). Dr. Go noted that Plaintiff had declined the recommendation for surgery "due to [the] previous failed surgery" (Tr. 383). The same day, Dr. Go completed a functional assessment, finding that pain would interfere with Plaintiff's work activities "constantly" (Tr. 410). He found that Plaintiff was unable to sit or stand for more than 10 minutes at a stretch and would be incapable of even "'low stress'" jobs (Tr. 410, 413). He found that Plaintiff would be unable to sit or stand/walk for even two hours in an eight-hour workday (Tr. 411). He found that Plaintiff would be even unable to perform jobs that allowed for a "sit/stand" option (Tr. 411). He found that Plaintiff was limited to moving his neck on "rare" basis (Tr. 411). He precluded all postural activities except for rare crouching and climbing of stairs (Tr. 412).

### (b) Non-Treating Sources

In November, 2010, Dr. Jai K. Prasad conducted a physical examination on behalf of the SSA, noting Plaintiff's reports of constant pain and radiculopathy of the upper and lower extremities (Tr. 363). Dr. Prasad noted that Plaintiff was limping and exhibited an anxious affect (Tr. 364). Plaintiff exhibited reduced grip but was able to button clothes (Tr. 365). Tinel's and Phalen's signs were negative (Tr. 365). His range of motion in the shoulder elbow, knee, ankle, wrist, hand, and fingers was normal (Tr. 366). Dr. Prasad noted that Plaintiff had declined a recommendation for additional surgery (Tr. 366). He opined that

-11-

"[u]nless the back is improved," Plaintiff was incapable of "physical work" (Tr. 366).

Following Dr. Prasad's consultive examination, Russell E. Holmes, M.D. performed a non-examining assessment of Plaintiff physical abilities, finding that Plaintiff was limited to lifting 10 pounds occasionally and less than 10 pounds frequently; sitting for six hours in an eight-hour workday and standing or walking for two; and frequent (as opposed to *constant*) pushing and pulling in the lower extremities (Tr. 127). Dr. Holmes precluded all crouching and climbing of ladders, ropes, or scaffolds (Tr. 127). He found that Plaintiff should avoid even moderate exposure to vibrations and hazards such as machinery and heights (Tr. 128). Leonard C. Balunas, Ph.D. performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding mild restriction in activities of daily living and social functioning and moderate deficiency in concentration, persistence, or pace (Tr. 125). He concluded that Plaintiff was capable of understanding, carrying out, and remembering "simple instructions" and performing one and two-step tasks (Tr. 130).

### C. Vocational Expert Testimony (August 14, 2012)

ALJ Xenos posed the following set of hypothetical limitations describing a hypothetical individual of Plaintiff's age, education, and work experience:

> Please assume an individual . . . who can perform work at the sedentary exertional level; needs a cane for ambulation, however, can carry small objects as necessary in his free hand; can occasionally operate foot and leg controls; cannot climb ladders, ropes, or scaffolds; cannot crouch; can occasionally climb stairs and ramps, balance, stoop, kneel, and crawl; should avoid vibration and hazards such as moving machinery and unprotected height; is limited to unskilled, simple, repetitive, self-paced work with only minimal changes in the work setting. Are there any jobs that an individual with that

-12-

residual functional capacity and given profile can perform? (Tr. 70).

The VE testified that given the above limitations, the individual would be unable to perform any of Plaintiff's past relevant work, but could perform the sedentary, unskilled work of a surveillance monitor (300 jobs in the regional economy); interviewer (700); and document preparer (Tr. 3,000) (Tr. 70-72).  The VE stated that if the same individual were further limited to occasional upward and sideways neck flexing; occasional overhead reaching and handling; frequent fingering; and work involving a sit/stand at will option, the interviewer and document preparer positions would be eliminated (Tr. 72).  The VE testified that if the same individual were "off task" up to 20 percent of the day due to the physical impairments, all work would be precluded (Tr. 73).  The VE stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") except for the testimony regarding the sit/stand option, which was based on his own professional experience (Tr. 73).

### D.     The ALJ's Decision

On September 12, 2012, ALJ Xenos found that Plaintiff was not disabled (Tr. 40).  She stated that she was bound by ALJ Rabaut's findings through the June 15, 2010 date of his decision[6] (Tr. 28).  Adopting ALJ Rabaut's findings, she found that Plaintiff experienced the severe impairments of "degenerative disc disease fo the lumbar spine, status post

---

[6]ALJ Xenos' decision was made prior to the District Court's October 31, 2013 order to remand the previous case.

laminectomy, discectomy, and foraminotomy at L2/3; degenerative disc disease of the

cervical spine; adjustment disorder with depressed mood; retrolisthesis L2 on L3; and

bilateral cubital tunnel syndrome," but that none of the conditions met or equaled any

impairment listed in 20 CRF Part 404, Subpart P, Appendix 1[7] (Tr. 29). She found that

Plaintiff experienced mild limitations in daily living and social functioning and moderate

deficiency in concentration, persistence, or pace (Tr. 30). The ALJ found that Plaintiff

retained the residual functional capacity ("RFC") for sedentary work with the following

additional limitations:

> [R]equires a sit/stand at will option; can never climb ladders, ropes, or
> scaffolds; can occasionally climb ramps and stairs; the claimant can only
> occasionally balance, stoop, crouch, kneel, and crawl; the claimant should not
> perform constant rotation, flexion, or extension of the neck; the claimant can
> only occasionally perform overhead reaching and handling of objects (gross
> manipulation); the claimant is limited to frequent finger (fine manipulation of
> items no smaller than the size of a paper clip); the claimant is limited to jobs
> which can be performed while using a hand held assistive device required only
> for uneven terrain or prolonged ambulation, and the claimant can use the
> contralateral upper extremity to lift and carry up to the exertional limits; the
> claimant should avoid concentrated exposure to excessive vibration; the
> claimant should avoid all exposure to unprotected heights; and the claimant
> can do only work that is limited to simple, routine, and repetitive tasks,
> performed in a work environment free of fast paced production requirements,
> involving only simple, work-related decision, and with few, if any work place
> changes (Tr. 31-32).[8]

---

[7]ALJ Xenos' Step Two "severe impairments" are identical to those found by ALJ
Rabaut.

[8]Except for minor stylistic changes, the RFC is identical to the one composed by
ALJ Rabaut. While ALJ Rabaut omitted the modifier "at will" from the sit/stand option,
as discussed in my previous report, the question to the VE in that case included the "at
will" modifier. Case no. 12-12071, *Docket #24*, 14.

Citing the VE's testimony from the original hearing, the ALJ found that Plaintiff could perform the jobs of a assembler, inspector, or packager (Tr. 39); Case no. 12-12071, *Docket #7* (Tr. 49-60).

Citing *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), the ALJ found that Plaintiff's condition had not materially changed since June 15, 2010 and as such, she was bound by ALJ Rabaut's earlier findings (Tr. 32). The ALJ cited the medical evidence post-dating the earlier decision including Dr. Go's 2011 treatment notes showing the absence of spinal tenderness and Dr. Soo's finding of "mild" weakness of the lower extremities (Tr. 36). The ALJ accorded "limited weight" to Dr. Go's May, 2012 opinion that Plaintiff was disabled (Tr. 37). She found that Plaintiff's professed degree of mental health problems was undermined by his failure to seek counseling (Tr. 38).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

-15-

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

In her Motion for Remand, Defendant concedes that a remand for further fact-finding is necessary. *Docket #17.* Defendant argues that the original claim, remanded by order of the District Court on October 31, 2013 should be consolidated with the present case for consideration of whether Plaintiff was disabled from the original onset of disability date of March 12, 2008 to the present. *See* Case no. 12-12071, *Docket #7.*

I agree. In ALJ Xenos' September 12, 2012 decision, she stated that ALJ Rabaut's June 15, 2010 decision was "binding on all parties" absent a subsequent "material change" in Plaintiff's condition (Tr. 26, 32)(citing *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997); *Dennard v. Secretary of Health and Human Services,* 907 F.2d 598 (6th Cir. 1990); Acquiescence Ruling ("AR") 98-4(6). While ALJ Xenos applied the correct standard as of the date of her decision, she could not have predicted that the District Court would later remand the original case for further fact-finding. Because the June 15, 2010 "final decision" on which she formed the September 12, 2012 conclusions has since been vacated, the legal standard applied by ALJ Xenos is now "incorrect." Case no. 12-12071.

Plaintiff agrees that ALJ Xenos applied the wrong legal standard. *Plaintiff's Brief,* 6-7, *Docket #15.* He argues however, that the evidence submitted after ALJ Rabaut's June 15, 2010 decision shows that Plaintiff's condition worsened significantly between then and

September 12, 2012. *Id.* He cites both the evidence before ALJ Rabaut and the newer evidence in support of his argument for a remand for benefits and includes all eight arguments made in the previous case as well as five more arguments pertaining only to ALJ Xenos' findings. *Id.* at 7-28. He contends that ALJ Xenos' erred by declining to give controlling weight to Dr. Go's May, 2012 opinion. He faults ALJ Xenos for instead according significant weight to non-examining sources whose assessments predated a portion of the treating records. He argues that the hypothetical question to the VE did not include all of his relevant limitation and makes an independent argument that the VE's job testimony was erroneous. He argues that ALJ Xenos did not address all of his alleged limitations.

Plaintiff's request for a remand for benefits on this record is unwarranted. First, my own review of the newer records indicates that Plaintiff has established a strong but not "overwhelming" case for benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994). Plaintiff's claims of limitation and constant pain are somewhat undermined by his December, 2011 statement that he was "not ready" to follow up on Dr. Soo's recommendation for minimally-invasive back surgery (380, 388). As noted by the ALJ, Plaintiff's allegations of significant depression and anxiety are unsupported by mental health treatment records. While Plaintiff alleged at the hearing that he had trouble writing complete sentences (Tr. 64), his oral testimony showing that he was able to answer questions in complete sentences and earlier observations that he did not experience problems writing stand at odds with his claims of significant cognitive or manipulative limitations. While

-18-

Plaintiff testified that he was placed in special education classes while in school (Tr. 63), he previously denied being placed in special education. Case no. 12-12071, *Docket #7* (Tr. 385). Dr. Holmes' finding that Plaintiff was capable of sedentary work (based on review of the existing treating and consultative records) also constitutes substantial evidence supporting the RFC found in the administrative decision.

Second, the "erroneous" application of *res judicata* by ALJ Xenos does not warrant an award of benefits. It is apparent only in hindsight that ALJ Xenos was not bound by the earlier findings. While Plaintiff faults the ALJ's analysis of the medical evidence and choice of hypothetical limitations, her factual findings, including the RFC and job findings, are largely intertwined with the erroneous application of *res judicata*. It is impossible to speculate how she would have determined the application if she had reviewed the evidence *de novo.*

In support of a remand for benefits, Plaintiff notes that as of November 13, 2014, Defendant had not yet scheduled a rehearing in the remanded case. *Docket #21,* 1. Plaintiff undoubtedly and understandably chafes at the delay in resolving the original case. Yet although he opposes Defendant's Motion for Remand for consolidation of these cases at the administrative level, he is in effect, asking *this* Court to "consolidate" the cases by relying on evidence from both the old and new cases in requesting a remand for benefits. However, because Defendant has not issued a final decision in the remanded case, the Court's review of the merits of the earlier case would be premature at best. *See* 42 U.S.C. § 405(g). A *de*

-19-

*novo* review of all the old and newer evidence by the ALJ hearing the remanded case would allow Plaintiff to present the more recent evidence he believes supports a disability finding. Practically speaking, a remand for consolidation of the old and new cases would not delay the resolution of this case at the administrative level. For these reasons, consolidation of the two cases at the administrative level is preferable.

While the Court should decline Plaintiff's request for a remand for benefits, I note that my own review of the case revealed another possibly significant error. In ALJ Xenos' discussion of Dr. Go's treating records, she cited April, 2012 notes stating that Plaintiff denied "range of motion limitations, joint pain, and muscle pain" (Tr. 37 citing 385-387). It is unclear how much weight Dr. Xenos accorded to the April, 2012 examination notes.

However, these records cannot be construed to reflect Plaintiff's condition. The examination notes state that Plaintiff denied both localized and radiating back and neck pain (Tr. 385). This finding directly contradicts Dr. Go's summary at the end of the report noted diagnoses of pain radiating into the lower extremities and neck pain (Tr. 387). Worse yet, another portion of the same record appears to be an uncompleted check list of *possible* conditions rather than Dr. Go's actually findings. For example, in the musculoskeletal category, the "findings" include mutually exclusive conditions: "unremarkable gait; unsteady gait; difficulty standing; full [range of motion]; limited [range of motion] . . ." (Tr. 387). Likewise, psychiatric findings include "memory intact" directly followed by "memory loss" (Tr. 387). These incomprehensible and contradictory observations (either a transcriber's

-20-

mistake or Dr. Go's failure to review his own examination notes) do not constitute substantial evidence and should be disregarded.   Upon remand, if necessary for resolution of the claim, the ALJ should re-contact Dr. Go for clarification of the April, 2012 findings.  *See DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. December 15, 2006)(ALJ required to re-contact medical source "if the evidence received from that source is inadequate for a disability determination"); 20 C.F.R. § 404.1512.

## CONCLUSION

For these reasons,  I recommend that Defendant's Motion to Remand [Docket #17] be GRANTED and that the case be remanded to ALJ Rabault for further administrative proceedings, to be consolidated with the remand previously ordered in Case No. 12-12071. I further recommend that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED as to the request for a remand for an award of benefits, and that his alternative request for a remand for further fact-finding be DENIED as moot.

Any objections to this Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 12, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 12, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager